IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILSON VERSTRAETE,

                    Plaintiff,

vs.                                    Case No. 11-1404-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On May 18, 2011 administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 13-22).  Plaintiff alleges that he has been disabled since August 14, 2008 (R. at 13). Plaintiff is insured for disability insurance benefits through December 31, 2013 (R. at 15).  At step one, the ALJ found that

4

plaintiff has not engaged in substantial gainful activity since
the alleged onset date (R. at 15).  At step two, the ALJ found
that plaintiff had the following severe impairments:
degenerative disc disease of the lumbar spine; status post
fusion (R. at 15).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 15).  After determining plaintiff's RFC (R. at 16), the
ALJ determined at step four that plaintiff is unable to perform
past relevant work (R. at 20).  At step five, the ALJ found that
there are jobs that exist in significant numbers in the national
economy that the plaintiff can perform (R. at 20-21).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 21-22).

**III.  Did the ALJ err by failing to specify the frequency of
plaintiff's need to alternate sitting, standing and walking?**

On November 19, 2009, Dr. Fluter performed an independent
medical examination on the plaintiff (R. at 412-417, Exhibit
7F).  Among his restrictions for the plaintiff he included the
following:

> 4.  Avoid prolonged sitting, standing, and
> walking.  Allowance should be made to
> alternate these activities and to change
> position periodically for comfort.

(R. at 417).  The ALJ gave substantial weight to the opinions of
Dr. Fluter (R. at 18), and included the limitations contained in

Dr. Fluter's assessment in her RFC findings for the plaintiff (R. at 16).  Included in the ALJ's RFC findings was the following:

> The claimant must avoid prolonged sitting, standing and walking, and must be able to alternate position periodically for comfort.

(R. at 16).

At the hearing on April 26, 2011, a vocational expert (VE), Cindy Younger, testified (R. at 41).  The ALJ asked the VE to assume the limitations contained in Exhibit 7F (R. at 43), which is the independent medical examination from Dr. Fluter.  The VE stated that she was familiar with that exhibit (R. at 43-44).  The testimony was as follows:

> A (by VE): Just a moment.  Is just says, "needs to alternate."  It's not saying how many hours for each.
>
> Q (by ALJ): When does it – at what point, or is there a point that the alternation would become too frequent?
>
> A: I feel that if alternation is needing to take place every 10 to 15 to 20 minutes, all work is precluded.  I feel that at the light exertional level, the individual needs to be able to stand and walk at least four hours out of an eight hour day or those positions would be eliminated…The occupations I cited, if alternation could be every 30 minutes or standing a total of four, sitting a total of four, those occupations would remain.

(R. at 44).

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work.  On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.**  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

SSR 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work.  One special situation covered in SSR 83-12 is the need to alternate between sitting and standing.  It states as follows:

> **In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and**

7

**standing**. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. **Such an individual is not functionally capable of doing** either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or **the prolonged standing or walking contemplated for most light work**. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. **However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task**. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4 (emphasis added).

In the case of <u>Armer v. Apfel</u>, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time."  2000 WL 743680 at *2.  The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant

would have to change positions from time to time was vague and did not comply with SSR 96-9p.  The court held that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing because the extent of the erosion of the occupational base will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The ALJ's findings also must be specific because the hypothetical questions submitted to the vocational expert (VE) must state the claimant's impairments with precision.  Id. at *2-3.

In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting plaintiff to light work which included a limitation to allow plaintiff brief changes of position (alternating sitting and standing).  The court stated as follows:

> Furthermore, if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and in his written decision must be particularly precise. For example, according to one of the agency's own rulings on sedentary labor, the description of an RFC in cases in which a claimant can perform less than the full range of work "must be specific as to the frequency of the individual's need to alternate sitting and standing." Social Security Ruling 96-9P, 1996 WL 374185 (S.S.A.) at *7. **Precisely how long a claimant can sit without a change in**

> **position is also relevant to assumptions**
> **whether he can perform light work.** 20 C.F.R.
> § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added).  The court then held

that the ALJ made a critical omission in his analysis by not

properly defining how often the claimant would need to change

positions.  84 Fed. Appx. at *5.

Finally, in Maynard v. Astrue, 276 Fed. Appx. 726, 731

(10th Cir. Feb. 16, 2007), the ALJ indicated to the VE that the

claimant needed a sit/stand option.  After quoting the language

of SSR 96-9p, the court held:

> The ALJ's hypothetical does not comply with
> the emphasized language in the foregoing
> quotation because it provided no specifics
> to the VE concerning the frequency of any
> need Mr. Maynard may have to alternate
> sitting and standing and the length of time
> needed to stand. The RFC in the ALJ's
> hypothetical is therefore flawed as it
> pertains to a sit-stand option, and the VE's
> response is not a reliable basis for
> analyzing the erosion of the unskilled
> sedentary occupational base or the total
> number of jobs Mr. Maynard can perform... .

This requirement in SSR 96-9p and the holdings in the three

10th Circuit cases cited above have been followed in the

following nine cases in the U.S. District Court for the District

of Kansas: Yohe v. Astrue, Case No. 10-1396-SAC (D. Kan. Jan.

10, 2012; Doc. 22 at 13-17); Gilbert v. Astrue, Case No. 10-

1050-SAC (D. Kan. March 7, 2011; Doc. 18 at 12-13); Gilmore-

Williams v. Astrue, Case No. 09-1276-SAC (D. Kan. July 26, 2010;

Doc. 19 at 8); Allen v. Astrue, Case No. 09-1271-SAC (D. Kan.
July 21, 2010; Doc. 21 at 14-16); Johnson v. Astrue, Case No.07-
1310-MLB (D. Kan. Jan. 7, 2009); Doc. 17 at 10-13); Trulove v.
Astrue, Case No. 08-1020-MLB (D. Kan. Oct. 22, 2008; Doc. 12 at
16-19); Gerhardt v. Astrue, Case No. 07-1301-MLB (D. Kan. Aug.
21, 2008; Doc. 17 at 18 n.6); Bentley v. Astrue, Case No. 07-
1364-MLB (D. Kan. Aug. 19, 2008; Doc. 11 at 16-19); Fairbanks v.
Astrue, Case No. 06-1206-MLB (D. Kan. June 12, 2007; Doc. 16 at
6-10).

Thus, the court rulings in the 10th Circuit and in the U.S.
District Court in Kansas have clearly and consistently indicated
since 2000 that the RFC assessment must be specific as to the
frequency of the individual's need to alternate sitting and
standing when plaintiff is limited to light or sedentary work.
By contrast, defendant fails to cite to any authority indicating
that such specificity is not required.

As the above cases indicate, language to change position
from time to time (Armer), or brief changes of position
(alternating sitting and standing) (Vail), or a sit/stand option
(Maynard) fail to specifically indicate the frequency of the
claimant's need to alternate sitting and standing.  Vail, as
noted above, makes it clear that the need to precisely indicate
how long a claimant can sit or stand/walk without a change in
position is also relevant to assumptions regarding whether the

claimant can perform light work.  This holding is entirely
consistent with the language in SSR 83-12, which states that
most jobs have ongoing work processes which demand that a worker
be in a certain place or posture for at least a certain length
of time to accomplish a certain task.  In light of the clear
authority set forth above, the ALJ clearly erred by failing to
specifically state the frequency of plaintiff's need to
alternate sitting and standing.

Defendant argues that the testimony of the VE makes it
clear that in finding plaintiff not disabled, the ALJ implicitly
determined that plaintiff would have to change positions at most
only every 30 minutes (Doc. 18 at 4-5).  However, despite the
fact that the VE alerted the ALJ to the lack of specificity in
the opinion of Dr. Fluter, and testified that greater
specificity was needed in order to determine if plaintiff could
perform the jobs that the VE had identified, the ALJ's RFC
findings failed to specifically indicate the frequency of
plaintiff's need to alternate sitting and standing.  The court
will not imply such a finding by the ALJ, especially given that
any specific finding by the ALJ would have to be supported by
evidence in the record.  The ALJ did not cite to any evidence in
the record in support of a finding that plaintiff could
alternate every 30 minutes (which, according to the VE, would
allow plaintiff to perform the jobs identified), as opposed to a

12

need to alternate 10 to 15 to 20 minutes (which, according to the VE, would preclude work).  Therefore, this case shall be remanded in order for the ALJ to provide an RFC assessment which is specific as to the frequency of plaintiff's need to alternate sitting and standing, and shall support such finding with medical and/or other evidence in the record.

**IV.  Did the ALJ err in her consideration of the medical opinion evidence in making her RFC findings for the plaintiff?**

The ALJ found that plaintiff could perform light work, with various other restrictions (R. at 16).  The ALJ's RFC findings are generally consistent with the opinions of Dr. Fluter, a consulting physician who examined the plaintiff (R. at 412-417), Dr. Williamson, a non-examining physician who prepared a physical RFC assessment on March 11, 2010, (R. at 427-434), and plaintiff's surgeon, Dr. Henry, who stated on June 24, 2009 that he would allow plaintiff to return to work with the restriction of lifting, pushing or pulling a maximum of 25 pounds (R. at 381).  The ALJ's RFC findings are also consistent with the work restrictions set forth by his treating physician, Dr. Hufford on September 18, 2009, October 16, 2009 and November 3, 2009 (R. at 307-309).[1]  The ALJ gave substantial weight to the opinions of Dr. Fluter (R. at 18), and Dr. Williamson (R. at 18-19).  The

---

[1] Although the ALJ did not reference the restrictions of Dr. Hufford, any such failure is clearly harmless error in light of the fact that his opinions are consistent with the ALJ's RFC findings.

ALJ also noted that Dr. Henry released plaintiff to return to work (R. at 17).

On April 18, 2011, Dr. Bauer opined that plaintiff clearly qualified for disability, suffering a significant disability due to ongoing lumbosacral spine nerve root impingement syndrome with failed operative intervention and chronic pain (R. at 452). The ALJ discounted his opinion because it was not consistent with diagnostic imaging which showed no more than mild to moderate degenerative disc disease (R. at 18).  This is supported by numerous medical records from 2009 and 2010 (R. at 252-253 (showing minor or mild degenerative changes), R. at 373-386-387 (showing normal anatomy except for the fusion level, which appeared well fused), R. at 437, 449 (showing negative exam, mild disc space narrowing and mild degenerative changes)). Furthermore, as noted by the ALJ, the opinion of Dr. Bauer is not supported by the opinions of other medical sources, including Dr. Fluter, Dr. Williamson, Dr. Henry and Dr. Hufford. The ALJ also noted that Dr. Bauer had at most a minimal treating relationship with the plaintiff, having seen the plaintiff on only two occasions (R. at 18).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The ALJ made RFC findings consistent with the medical opinions of Dr. Fluter, Dr. Williamson, Dr. Henry and Dr. Hufford.  The ALJ could reasonably discount the opinions of Dr. Bauer in light of the contradictory medical opinions, the diagnostic imaging tests, and the limited nature of the treatment relationship.  For these reasons, the court finds that substantial evidence supports the ALJ's RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 22nd day of January 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge